| 140 | 193 |
|---|---|
| 67a | 268 |

| 140 | 193 |
|---|---|
| 82a | 332 |
| 82a | 333 |

| 140 | 193 |
|---|---|
| 182 | 74 |
| 182 | 75 |

THE UNION NATIONAL BANK *et al.*

*v.*

JOHN W. DOANE.

*Filed at Ottawa January 18, 1892.*

1. VOLUNTARY ASSIGNMENT—*distribution of assets within three months —liability of distributees upon claims subsequently proven.* A creditor of an insolvent's estate bought up what were supposed to be all the claims against the estate, and offered to purchase the entire property assigned at a price equal to the claims so held by him, which the assignee reported to the county court, and the court directed the assignee to accept the offer and turn over the property to such purchaser; but the order was made before the time limited for the presentation of claims against the estate, and within the time limited another creditor presented and proved his claim, which was allowed, but there was nothing left to pay him: *Held*, that the county court, on the discovery of its error, had the right to require the creditor so paid in full to return so much of the amount he had received as might be required to place the other creditor upon an equal footing.

2. SAME—*of allowance of claims by county court.* Where a claim is presented, under oath, to the assignee of an insolvent's estate within the time and in the manner required by the statute, and no exception is filed to such claim, its allowance by the county court will, at least *prima facie*, establish the right of the holder thereof to participate in the proceeds of the assigned estate. The county court will have jurisdiction to investigate and pass upon the validity of claims presented within the time required by statute.

3. SAME—*when distribution may be ordered.* The county court has no power, under the law, to order the distribution of the proceeds of an assigned estate before the expiration of the three months provided in the act relating to voluntary assignments for the benefit of creditors, and any such order will be a nullity, and the court may at a subsequent term set such order aside.

4. Section 4 of the Assignment act requires the assignee, on the expiration of three months from the time of first publishing notice, to file with the clerk of the county court a true and full list of all claims, and section 6 provides that at the first term of the county court after the expiration of three months, should no exception be made to the claim of any creditor, or settled if made, the court shall order the assignee to make, from time to time, fair and equal dividends among the creditors, of the assets in his hands, and as soon as may be within one year thereafter to render a final account of the trust.

13—140 ILL.

5. REVERSAL OF JUDGMENT—*effect upon rights acquired under.* The law is well settled that a party to an erroneous judgment or decree is chargeable with notice of all errors in the record, and a reversal restores the parties to their original rights, and the title acquired under such judgment is divested, unless the purchaser is a stranger. A creditor of an insolvent estate, who, under a void order, obtains possession of the entire estate assigned in payment of his demands, is to be considered a party to the proceeding, and chargeable with notice of errors in the proceedings under which he claims.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. E. H. GARY, Judge, presiding.

On August 31, 1888, Samuel Bliss made a voluntary assignment for the benefit of creditors, to George M. Bogue, assignee. The deed and inventory of the assets of Bliss were filed September 1, 1888, in the office of the clerk of the county court of Cook county, showing the assets and liabilities of the insolvent. The assignee took possession of the assets, and published a notice requiring all persons having claims against the estate to present them to the assignee within three months thereafter. The first publication of the notice was on the 1st of September, 1888, and the last on the 6th of October, 1888. It also appears that by the orders of the county court, on the 13th and 27th days of September, 1888, respectively, the assignee continued to conduct the business of the insolvent, and on the 12th of October he filed his petition, submitting a bid of Edward J. Holden for the purchase of all of the assets of Bliss for the sum of $97,344.41, being the entire amount of all claims against the insolvent which had come to the knowledge of the assignee. On October 12, 1888, an order *nisi* was entered, authorizing an acceptance of such bid, and the sale of such assets in accordance therewith, unless objections were filed before the 15th of October, 1888. No objections to such sale having been filed, an absolute order was entered on the 16th day of October, 1888, directing the assignee to make such

sale and conveyance accordingly, and in pursuance of such order the assignee sold and conveyed to Holden all of the assets of the insolvent, and executed a formal conveyance to Holden on the 5th day of November, 1888, and received from Holden, in accordance with such order, an assignment of the claims against the estate of said Bliss which had then come to the knowledge of the assignee. In accordance with the terms of such order of sale, Holden transferred and surrendered to the assignee claims against said Bliss, the same having been first duly assigned to Holden by the claimants, and such assignment being accepted by the assignee as such purchase money, in accordance with the order of sale. It also appears that within the three months provided for creditors to present claims against the insolvent, to-wit, on November 30, 1888, the bank presented its claim for $1417.80 to the assignee, and that no objection was ever interposed to the claim by any person. It also appears that while the purchase of the assets was made in the name of Edward G. Holden, the money to purchase the claims was all furnished by the appellee, John W. Doane, and he was the real party in the transaction.

On the 10th day of January, 1890, the bank filed its petition in the county court, alleging the presentation of its claim to the assignee on the 30th day of November, 1888, the sale of the assets by the assignee in payment of claims against the insolvent, and asking that Holden and Doane be required to answer the petition; that the order of sale of October 12, 1888, be amended and modified by striking out the words, "in the surrender and transfer at their face value," and in lieu thereof inserting the words, "in the surrender and transfer at the same percentage on the dollar as said $97,344.41 shall be of the total of all claims proven against said estate within the time fixed by the statute;" that Holden and Doane repay to the assignee, for the benefit of the petitioner, a sum equal to such proportion of petitioner's said claim as the sum of

$97,344.41 shall be of the total of all claims duly proven against the estate.

Holden and Doane answered the petition, and upon a hearing before the court a decree was rendered that the order of October 12, 1888, be amended and corrected, by striking therefrom the words, "in the surrender and transfer at their face value," and in lieu thereof inserting the words, "in the surrender and transfer at the same percentage on the dollar as said $97,344.41 shall be of the total of all claims proven against said estate within the time fixed by statute." It was further decreed that said John W. Doane pay to said assignee, for the use of said Union National Bank and W. C. D. Grannis, the sum of $1371.01 within ten days from the date thereof, and that upon the receipt by said assignee of said sum, he pay the same to said petitioners, taking their receipts therefor. From this decree an appeal was taken to the Appellate Court, where the judgment was reversed, and the county court directed to dismiss the petition.

Messrs. WILLITS, ROBBINS & CASE, for the appellants.

Messrs. HANECY & MERRICK, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

As to the validity of appellants' claim against the insolvent estate, we perceive no substantial objection to it. The claim was presented, under oath, to the assignee within the time and in the manner required by the statute, and no exception was filed to the claim by any person, as may be done under section 5 of the act concerning voluntary assignments. But in addition to this, if the validity of the claim was a proper subject for investigation on the hearing of the petition, the injunction bond and the order or judgment assessing damages, in connection with the other evidence before the court, was sufficient, *prima facie*, to establish the claim, and as no evi-

dence was introduced against the claim, it must be regarded as fully established.

The court, in the decree, found that Holden acted as agent of Doane, who was the real party in interest in the transaction; but it is claimed that Doane was an entire stranger to the proceedings. This position is not sustained by the testimony. The evidence of George M. Bogue, which was not contradicted, shows plainly that Doane was the real party in interest. He testified: "Claims aggregating $74,091.21 were purchased in the name of Edward J. Holden prior to October 12, 1888. The money to do this was furnished to me by Mr. Doane. The talk I had with Mr. Doane previous to buying these claims was, that he would buy the claims through me, but in the name of Holden." At the time of the transaction Holden was a clerk of Doane, working on a salary, and while the business was done in his name, it is apparent from his evidence, and also from the evidence of Doane, that Holden had no interest whatever in the claims against the insolvent which were purchased, or in the assets which were turned over to him for such claims.

But the main question presented by the record is, whether the county court had the power, by the decree or order entered therein, to change or modify the order of October 12, 1888. The Assignment act confers jurisdiction on the county court to execute and carry out the provisions of the act. Creditors are allowed three months from the date of publication by the assignee to present their claims. Section 4 of the act (Laws of 1877, p. 117,) requires the assignee, at the expiration of three months from the time of first publishing notice, to file with the clerk of the county court a true and full list of all claims, and section 6 provides, that at the first term of the county court after the expiration of the three months, should no exceptions be made to the claim of any creditor, or if exceptions have been made and the same have been adjudicated and settled by the court, the court shall order the assignee to make, from time to time, fair and equal divisions among the

creditors, of the assets in his hands, and as soon as may be, within one year thereafter, to render a final account of the trust.

Under these provisions of the statute it is manifest that the court had no power whatever to make an order for the distribution of the estate before the expiration of the three months provided in the act, and as the order of October 12 was, in effect, an order providing for a distribution of the assets of the insolvent among a part of the creditors before the expira- tion of three months, it was a nullity. An order of this character is not unlike an order of a probate court for a final settlement of an estate of a deceased person before the estate has been administered according to law, which this court has held to be a nullity. *Blanchard* v. *Williamson,* 70 Ill. 650; *Diversey* v. *Johnson,* 93 id. 547.

The order being a nullity, had the county court a right to change or modify it? Doane held a claim of his own against the insolvent estate, and he purchased other claims, which, with his own, amounted to the sum of $97,344.41. Claims to the amount of $74,091.21 had been purchased before the order was made, and to that amount he occupied the position of a creditor at the time the order was entered. After the order other claims were secured, making him finally a creditor to the amount of $97,344.41. In exchange for the claims thus held by him he received the entire assets of the insolvent estate. Thus the property passed into the hands of the appellee, Doane, a creditor, under an order made by the court which was a nullity. The order being a nullity, the court might properly change or set it aside at any time before a final closing up of the insolvent estate was ordered. There was an order entered before the time allowed by law for filing claims had expired, under which all the creditors were paid in full, except one, and nothing was left in the hands of the assignee to pay that creditor any portion of its claim. When the court discovered the error that had been committed, we perceive no reason why it might not, upon a proper showing, require the

creditors who had been paid in full to return so much of the amount they had received as might be required to place the other creditor upon an equal footing with them. . This the last order of the court did, and nothing more.   The assets had been received by Doane, who was a creditor, and, as such, a party to the proceedings, and had been disposed of by him, and when the court had modified the order, we think it plain that the court had the power to require him to return the value of that portion of the assets which justly belonged to appellant, another creditor.   The law is well settled that a party to an erroneous judgment or decree is chargeable with notice of all errors in the record, and a reversal restores the parties to their original rights, and the title acquired under such judgment is divested unless the purchaser is a stranger. (*Powell* v. *Rogers*, 105 Ill. 318.)   While the order here involved was not reversed on appeal or writ of error, yet having been changed and modified by the same court in which it was rendered, the principle which would control in the former one ought to be applied here.

We think the judgment of the county court was correct. The judgment of the Appellate Court will be reversed, and that of the county court affirmed.

*Judgment reversed.*